UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PROTECT OUR DEFENDERS and CONNECTICUT VETERANS LEGAL CENTER, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE and UNITED STATES DEPARTMENT OF JUSTICE <br><br> *Defendants*. | Civil Action No. 3:22-cv-1390 <br><br><br> November 3, 2022 |

## COMPLAINT

1. Protect Our Defenders and the Connecticut Veterans Legal Center (collectively "Plaintiffs") requested records related to servicemember prosecutions from the Department of Justice and Department of Defense (collectively "Defendants") under the Freedom of Information Act ("FOIA") in May 2022. Specifically, they requested memoranda of understanding between military and civilian prosecution authorities, and data related to servicemember prosecutions for select offenses on and around military bases in California, New York, Virginia, and Texas. Plaintiffs bring suit because, with the exception of the Marine Corps, Defendants have ignored Plaintiffs' requests in violation of the law.

2. Plaintiffs' requests are intended to increase public understanding of Defendants' response to crime among members of the active-duty military at a time when the public and Congress are focused on reform. In 2021, Congress passed legislation to curtail command authority over investigations and prosecutions of serious crimes by military servicemembers, including sexual assault. As Congress considers follow-on measures, including in the National

Defense Authorization Act of 2023, disclosure of the requested records will facilitate public understanding of how the military justice system currently operates, and may reveal why rates of serious offenses—especially sexual violence—have remained stubbornly high.

3. The records will also help identify disparities between the military and civilian justice systems' prosecution of servicemembers for serious offenses: possession of controlled substances, manslaughter, murder, rape, sexual assault, and sexual exploitation of children. The records are likely to show that the military justice system fails victims of servicemember crimes—who have less judicial recourse than victims of nearly identical crimes perpetrated by a civilian—by under-prosecuting sexual assault in particular.

4. A lack of public understanding allows abuses of the military justice system to persist unconfronted. This causes irreparable harm not only to victims, but also to the military institutions themselves. The insights that Plaintiffs will derive from the requested records may also help inform individual servicemembers' future applications for discharge upgrades by highlighting disparities in punishment based on demographic factors.

5. Plaintiffs bring this action under 5 U.S.C. § 552 for declaratory and injunctive relief to compel a reasonable search for records and timely production of responsive, non-exempt records.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. § 1331 and § 1361.

7. Venue lies in this district under 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. § 1391(e)(1) as Plaintiff Connecticut Veterans Legal Center is incorporated in Connecticut and has its principal place of business in the District of Connecticut, and no real property is involved in the action.

## PARTIES

8. Plaintiff Protect Our Defenders ("POD") is a national organization that advances research and conversations to end sexual violence, victim retaliation, misogyny, sexual prejudice, and racism in the military, and combats a culture that has allowed it to persist.

9. Plaintiff Connecticut Veterans Legal Center ("CVLC") is a Connecticut-based medical legal partnership that engages in advocacy and public education to promote respect and acceptance of all who served our country, and works to secure benefits for veterans and their families.

10. Defendant United States Department of Justice ("DOJ") is an agency within the meaning of 5 U.S.C. § 552(f)(1). The United States Attorney's Offices—which may prosecute servicemembers for federal offenses—are sub-agencies of the DOJ.

11. Defendant United States Department of Defense ("DOD") is the federal agency that represents the branches of military service, including the Army, Air Force, Navy, and Marine Corps. DOD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

**The Military Justice System Fails to Accomplish its Mission**

12. For decades, advocates for reforming the Uniform Code of Military Justice ("UCMJ") have fought a battle on two fronts: for equality in the UCMJ's treatment of servicemembers of all races and genders, and for equality between the civilian and military justice systems. That battle has centered on one central tension: the incompatibility of command authority and an equitable justice system.

13. Historically, military commanders wielded nearly unfettered disciplinary authority over the soldiers in their command. In a standard court-martial under the pre-UCMJ

military code, commanders wielded the charging authority of a prosecutor, the investigative authorities of a police officer, the presiding authority of a trial judge, and the review authority of an appellate judge.

14. This concentration of power in commanders led to tremendous disparities in how justice was meted out, especially during wartime. During World War II, the United States conducted over one million courts-martial, impacting nearly a tenth of the force. Of those courts-martial, over 140 resulted in the death penalty, with Black soldiers disproportionately represented among those numbers.

15. In response to pressure from returning servicemembers protesting the arbitrary and capricious nature of these prosecutions, Congress enacted the UCMJ in 1950.

16. The UCMJ promised greater parity between the civilian and military justice systems by curtailing commanders' nearly unfettered legal authority. Through its initial enactment and subsequent amendments, the UCMJ established an independent military judiciary "free from command pressures and control," as President Lyndon B. Johnson described it, and gave defendants the basic right to appeal, and statutory protections against unlawful command influence.

17. By reducing the near-total legal authority of potentially biased commanders, the UCMJ also promised parity between servicemembers of diverse races and genders, who had been formally integrated into the military just two years prior to the enactment of the UCMJ.

18. However, despite the promise of the UCMJ to promote equality under the law, substantial racial and gender disparities persist within the military justice system.

19. Studies show that the DOD consistently over-prosecutes servicemembers of color. In 2019, the Government Accountability Office (GAO) found that Black servicemembers were

twice as likely as their white counterparts to face investigations and courts-martial. Hispanic servicemembers were one-and-a-half times as likely to face the same.

20. Studies have also consistently shown that military justice consistently under-prosecutes perpetrators of sexual assault. Although 5,640 servicemembers filed a full complaint for sexual assault across the military in FY2020, there were only 255 court-martial proceedings, of which 50 resulted in a conviction. That is a trial rate of 4.5%, and a conviction rate of 0.8%. By contrast, the nation's largest anti-sexual violence organization reports that 2.8% of civilian sexual assaults led to felony convictions between 2012 and 2016.

21. The under-prosecution of sexual assault has discouraged servicemembers from coming forward with reports of unwanted sexual contact. According to DOD's 2021 Annual Report on Sexual Assault in the Military, an estimated 35,900 active-duty servicemembers reported experiencing at least one unwanted sexual contact in the last year. Factoring in these unreported cases, the military's trial rate drops to an abysmal 0.6%.

22. This problem has eroded trust within military formations. In FY2021, the DOD received the highest number of sexual assault reports since it started tracking sexual assault data. The rates corresponded with the lowest-ever reported levels of trust in the military to support victims of sexual assault. One metric showed trust in the military among military women dropped from 73% in 2010 to 39% in 2021.

### The Department of Justice Prosecutes Servicemembers Through the Civilian Criminal Justice System

23. Certain crimes committed by servicemembers fall under both the jurisdiction of the DOJ and the DOD. According to a Memorandum of Understanding (MOU) established in 1984 between the DOD and DOJ, DOJ has primary responsibility for prosecuting significant allegations of bribery, organized crime, and certain federal crimes committed off military

installations. Neither Defendant has made public whether this MOU remains in force, has been revised, or has been rescinded. Nor has either Defendant made public whether local U.S. Attorneys' offices have signed supplementary MOUs with local military installations.

24. The crime records and MOUs requested from DOJ are necessary to achieve a holistic understanding of how servicemembers are held accountable for alleged offenses.

25. In addition, Plaintiffs have reason to believe there are significant discrepancies in outcomes for servicemembers between the civilian and military justice systems.

26. The public has a right to know how the federal government prosecutes its servicemembers, whether within or without the military justice system.

**Laws Change as a Result of POD and CVLC's Work**

27. Plaintiffs' proven track record of identifying injustice in the military justice system and pushing for legislative change demonstrates that disclosure of the military records sought in this case has the potential to drive needed reforms.

28. Through advocacy, public education, and pro bono support, POD works to provide those who serve in the military a safe and respectful environment free from harassment and abuse, and to create a justice system that can fairly and effectively adjudicate crimes including sexual assault.

29. CVLC's medical-legal partnership model serves marginalized veteran clients, most of whom have serious mental illness. Many of CVLC's clients experienced sexual assault and harassment in the military, and many experienced racial bias in the military. In furtherance of its mission, CVLC also engages in legislative advocacy – including in collaboration with POD – to prevent current and future servicemembers from experiencing the same harms as past generations.

30. CVLC has, for example, litigated a FOIA suit to uncover racial and ethnic inequities in congressional nominations to the U.S. military service academies, and issued and publicized two reports, "Gatekeepers to Opportunity," as part of an advocacy initiative to increase diversity in the officer ranks.

31. POD has driven legislative progress on military justice reform for survivors of sexual assault through its advocacy in support of the Military Justice Improvement Act (MJIA). First introduced by Senator Kirsten Gillibrand in 2013, the MJIA would transfer the decision to prosecute sexual assault and serious crimes from the chain of command to independent, trained, professional military prosecutors.

32. In July 2013, the Senate Armed Services Committee held a hearing on military sexual assault and whether commanders should retain prosecution authority over sexual offenses.

33. During the hearing, the military claimed it had uncovered 93 cases where a commander insisted that an allegation was prosecuted by court-martial after a civilian prosecutor refused to prosecute the case.

34. POD filed FOIA requests for the 93 cases. DOD's responses, as disclosed in "Debunked," a report produced by POD, showed that the military had misled the Senate about the 93 cases. The report was released in conjunction with an exclusive investigative feature by the Associated Press in April 2016, and significantly undercut the basis of Pentagon opposition to military justice reforms.

35. In 2016, POD filed FOIA requests for data on racial disparities in the military justice system. POD's June 2017 report analyzing the data exposed significant racial disparities in the military justice system. POD released the report to the public. USA Today confirmed POD's data and published a front-page article concurrent with the release of the report.

36. The report garnered significant national media coverage, and POD's related advocacy resulted in Congress mandating a GAO review of racial disparities.

37. The GAO report released in 2019 confirmed POD's findings and led to a House Armed Services Committee hearing on racial disparities in which Don Christensen, the president of POD, testified. Based on POD and GAO's report, Congress passed legislation requiring the military to track the race, ethnicity, and gender of servicemembers who are court-martialed. The Secretary of Defense also required the military to identify the causes of the disparities and to take steps to address the causes.

38. POD and CVLC collaborated to litigate a FOIA suit against the Air Force to secure release of its study and assessment regarding racial disparities in its justice system, and released a report exposing the Air Force's attempts to cover up its knowledge of these disparities. POD again published the report publicly and worked with USA Today to break the story.

39. The report led the Air Force to order two Inspector General investigations concerning racial disparities, including in career advancement. After the release, Congress passed additional legislation requiring each service to assess racial disparities in military justice and discipline process and military personnel policies.

40. In 2021, after years of legislative advocacy, Congress enacted a portion of the Military Justice Improvement Act (MJIA). This legislative reform codified the crime of sexual harassment for the first time under the UCMJ and finally empowered independent military prosecutors, not commanders, to determine whether servicemembers accused of rape, murder, and other serious crimes will be prosecuted.

41. These reforms are a major step forward, but commanders nonetheless maintain authority to conduct trials, select jury members, and approve witnesses. Recognizing this issue,

the Senate Armed Services Committee introduced a provision in June 2022 as part of the 2023 National Defense Authorization Act (NDAA) that would remove any "residual prosecutorial and judicial duties" from commanders, and empower the special victim prosecutor's corps to prosecute sex crimes against children.

42. As Congress considers these reforms, military justice reform advocacy groups and the broader public should have access to the records that are the subject of this action, so as to make informed contributions to this debate. Releasing these records upholds the express purpose of FOIA: to "ensure an informed citizenry . . . to check against corruption and to hold the governors accountable to the governed." *NARA v. Favish*, 541 U.S. 157, 171-172 (2004).

43. Time and again, Plaintiffs' efforts push the DOD to foster an environment free of harassment and abuse have demonstrated the effectiveness of FOIA litigation to prompt legislative change by Congress.

**Plaintiffs' FOIA Requests**

44. On May 9, 2022, Plaintiffs submitted FOIA requests via certified mail and online FOIA portal or email to five entities: the Department of Justice, the United States Navy, the United States Army, the United States Air Force, and the United States Marine Corps. Copies of the requests are attached as **Exhibits A, B, C, D, and E**, respectively.

45. In their requests, Plaintiffs sought memoranda of understanding (MOUs) from the past 15 years between military prosecutors and local or federal officials which indicated a delineation of responsibility for prosecution of servicemembers. Such MOUs set out informal and formal methods, procedures, and policies where a servicemember is alleged to have committed a criminal offense.

46.     The Plaintiffs further requested demographic data of servicemembers prosecuted within the past 15 years, as well as information regarding important stages of the prosecution, such as final disposition and sentencing data. For the service branches, Plaintiffs also requested similar data for the prosecution of seven UCMJ offenses from the past 15 years.

47.     Plaintiffs requested fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II), showing that the records requested will contribute to the public understanding of the operations and activities of the government, that the records requested are not in their commercial interest, and that they can and intend to disseminate the records requested as representatives of the news media.

### *Department of Justice Request*

48.     On May 11, 2022, Plaintiffs received a response from Kevin Krebs, the Assistant Director of the Freedom of Information and Privacy Staff for the Executive Office for United States Attorneys (EOUSA). This response acknowledged receipt of the FOIA request and assigned the FOIA request the tracking number EOUSA-2022-001897 (copy included as **Exhibit F**).

49.     The EOUSA response stated that Plaintiffs' request fell under the "unusual circumstances" provision of 5 U.S.C. § 552(a)(6)(B)(i)-(iii). The response went on to say that, as a result, EOUSA was "extending the time limit to respond to [y]our request beyond the ten additional days provided by the statute." (**Exhibit F**). The FOIA provides that, under unusual circumstances, the agency can extend the statutory deadline to respond by no more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i). EOUSA did not provide an explanation for exceeding this statutory allowance. The EOUSA response also stated that Plaintiffs' request had been put in the processing track for "complex" requests.

50. Pursuant to 5 U.S.C. § 522(a)(6)(A)(i), EOUSA had twenty working days from May 9, 2022, to make a determination as to Plaintiffs' request. Even assuming EOUSA invoked the maximum allowable extension of ten working days under 5 U.S.C. § 522(a)(6)(B)(i), the agency's deadline to provide a determination was June 21, 2022.

51. EOUSA has not responded since May 11, 2022 and has not produced any responsive records.

*U.S. Navy Request*

52. On May 9, 2022, the Department of the Navy acknowledged receipt of the FOIA request by email and assigned the FOIA request the tracking number DON-NAVY-2022-008038 (copy included as **Exhibit G**).

53. Pursuant to 5 U.S.C. § 522(a)(6)(A)(i), the Department of the Navy had twenty working days from May 9, 2022, to make a determination as to Plaintiffs' request, making the deadline June 7, 2022.

54. The Department of the Navy has not responded since May 9, 2022 and has failed to produce any responsive records.

*U.S. Army Request*

55. On May 9, 2022, the Department of the Army responded by email acknowledging receipt of the FOIA request but did not assign the FOIA request a tracking number (copy included as **Exhibit H**).

56. Pursuant to 5 U.S.C. § 522(a)(6)(A)(i), the Department of the Army had twenty working days from May 9, 2022, to make a determination as to Plaintiffs' request, making the deadline June 7, 2022.

57.     The Department of the Army has not responded since May 9, 2022 and has not produced any responsive records.

### *U.S. Air Force Request*

58.     On May 18, 2022, the Department of the Air Force responded by email acknowledging receipt of the FOIA request and assigned the FOIA request the tracking number 2022-03895-F (copy included as **Exhibit I**).

59.     Pursuant to 5 U.S.C. § 522(a)(6)(A)(i), the Department of the Air Force had twenty working days from May 9, 2022, to make a determination as to Plaintiffs' request, making the deadline June 7, 2022.

60.     The Department of the Air Force has not responded since May 9, 2022 and has not produced any responsive records.

### *U.S. Marine Corps Request*

61.     On May 9, 2022, the United States Marine Corps received the FOIA request and assigned it the tracking number DON-USMC-2022-008039 (copy included as **Exhibit J**). On May 12, 2022, Michael L. Peters, of Administration and Resource Management, Headquarters Marine Corps, acknowledged receipt of the FOIA request via email (copy included as **Exhibit K**).

62.     The United States Marine Corps responded with an initial production of records on October 5, 2022. The U.S. Marine Corps, the smallest and most resource-limited service branch of the DOD, was the only entity to substantively respond to the Plaintiffs' requests. The Marine Corps' response demonstrates both the reasonability of the request and the probability that the data the Plaintiffs seek exist in an automated platform, and are not exempt from FOIA. Defendants need only search for it.

*\*\*\**

63. At the heart of the erosion of public trust in our military is the broken promise of the military justice system. Despite the reforms to UCMJ, problems of unequal treatment under the law have remained, and perhaps even grown worse. Lack of public understanding has allowed this problem to develop, and the Defendants' unlawful failure to respond to reasonable requests for records should not impede much-needed change.

## CLAIMS FOR RELIEF

64. Plaintiffs repeat and incorporate every allegation contained in paragraphs 1 – 63 as it is set forth here in full.

65. Defendants' failure to provide Plaintiffs with memoranda of understanding between military and civilian prosecutors violated Plaintiffs' rights as members of the public under 5 U.S.C. § 552(a)(1)(B)-(E).

66. Defendants' failure to notify Plaintiffs within twenty days (excepting Saturdays, Sundays, and legal public holidays) of whether it will comply with their requests violated Plaintiffs' rights to records under 5 U.S.C. § 552(a)(6)(A)(i).

67. Defendants' failure to release responsive, non-exempt records to the Plaintiffs violated Plaintiffs' rights under 5 U.S.C. § 552(a)(3)(A).

68. To the extent Defendants have not yet conducted a reasonable search for responsive records, Defendants have violated Plaintiffs' rights under 5 U.S.C. § 552(a)(3)(C).

69. To the extent Defendants have denied Plaintiffs a full fee waiver, Defendants violate Plaintiffs' rights under 5 U.S.C. § 552(a)(4)(A)(iii) and Department of Defense and Department of Justice implementing regulations under 32 C.F.R. § 286.12(l)(2) and 28 C.F.R. § 16.10(d)(1), as the disclosures are in the public interest and not in the commercial interest of the Plaintiffs.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Order Defendants to conduct a reasonable search for records responsive to their requests;

2. Order Defendants to disclose and release the requested records in their entireties;

3. Order Defendants to grant a full fee waiver to Plaintiffs;

4. Provide for expeditious proceedings in this action;

5. Award Plaintiffs costs and reasonable attorney's fees in this action as provided by 5 U.S.C. § 552(a)(4)(E)(i);

6. Grant any other and further relief the Court deems appropriate.

Dated: November 3, 2022
New Haven, CT

> Respectfully submitted,
>
> By: /s/ Meghan Brooks
> Jackson Akselrad, Law Student Intern*
> Brian Liu, Law Student Intern*
> Maggie Mills, Law Student Intern*
> Renée Mihail, Law Student Intern*
> Michael Wishnie, Supervising Attorney
> Meghan Brooks, Supervising Attorney
> Jerome N. Frank Legal Services Organization
> Veterans Legal Services Clinic
> Yale Law School
> P.O. Box 209090
> New Haven, CT. 06520-9090
> Tel: (203) 432-4800
> meghan.brooks@ylsclinics.org
>
> *Motion for law student appearance forthcoming.*
>
> *Counsel for Plaintiffs*